# United States Tax Court

T.C. Memo. 2026-65

GERALD A. BEACOM AND JEAN A. BEACOM,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 14877-24.                    Filed August 11, 2026.

————

Gerald A. Beacom and Jean A. Beacom, pro sese.

*Ian A. Abaie* and *Michael R. Harrel*, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PUGH, *Judge*: The Internal Revenue Service (IRS or respondent) determined a deficiency of $11,057 and an accuracy-related penalty under section 6662(a)[1] of $2,211.40 for petitioners' 2021 tax year. The deficiency and penalty are attributable to the disallowance of the carryforward of an alternative minimum tax (AMT) credit.

## FINDINGS OF FACT

The facts we find are drawn from the pleadings, trial testimony, and documents admitted into evidence. Some of the facts have been stipulated and are so found. Petitioners resided in Arizona when they timely filed their Petition.

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

**Served 08/11/26**

**[\*2]**   Petitioners relied on TurboTax's software to file their federal income tax returns; this software tracked and applied any AMT credits. The origin of petitioners' AMT credit claim is unclear;[2] they first reported the AMT credit carryforward before 2008 but a flood that year destroyed their returns and other records from before 2008.[3]

Only two of petitioners' pre-2017 Forms 1040, U.S. Individual Income Tax Return, are in the record: 2010 and 2013. Petitioners reported their carryforward on Form 8801, Credit for Prior Year Minimum Tax—Individuals, Estates, and Trusts, which was attached to their Forms 1040. On their 2010 and 2013 returns, petitioners reported a $62,190 AMT credit carryforward; none of the AMT credit was applied towards their 2010 or 2013 federal income tax liability. Respondent could not find records of petitioners' tax transcripts before 2017.

Their 2017 return reported a $57,025 AMT credit carryforward from the prior year. That return applied $3,974 of the credit and carried forward the remaining $53,051 to the next tax year. For 2018 petitioners applied $3,889 of the credit and carried forward $49,162. For 2019 petitioners applied $3,723 of the credit and carried forward $45,439. For 2020 petitioners applied $4,154 of the credit and carried forward $41,285.

For 2021 petitioners applied $11,057 of the AMT credit and carried forward the remaining $30,228. On July 22, 2024, the IRS issued a Notice of Deficiency that disallowed the entire amount of the AMT credit and computed the section 6662(a) penalty on the basis of that disallowance.

OPINION

I.   *Evidentiary issues*

We begin with one remaining evidentiary issue. At trial petitioners offered Exhibits 23-P, 24-P, 25-P, and 26-P, representing unsigned copies of their 2010, 2013, 2017, and 2018 Forms 1040, respectively. We admitted Exhibits 25-P and 26-P, subject to respondent's objections that they were unverified and unsigned returns. We deferred ruling on the admissibility of Exhibits 23-P and 24-P

---

[2] Petitioners surmise that the AMT credit arose at some point between 1999 and 2005 (possibly attributable to the exercise of stock options around 1999 or 2000).

[3] Petitioners were also unable to access records before 2008 through TurboTax.

**[\*3]** because petitioners had not exchanged those documents previously with respondent.

The Standing Pretrial Order issued to the parties stated that the parties were to exchange all documents expected to be used at trial at least 14 days before the date set for trial. Rule 131(b) provides that failure to comply with a standing pretrial order may subject a party to sanctions. The Standing Pretrial Order warned that one possible sanction for violating the 14-day rule was the exclusion of evidence that was not exchanged in accordance with that requirement. *See Rodriguez v. Commissioner*, T.C. Memo. 2017-173, at \*5 (citing *Moretti v. Commissioner*, 77 F.3d 637, 644 (2d Cir. 1996)). In weighing the appropriate sanction for violating the 14-day rule, we consider whether the opposing party was prejudiced by the failure. *See, e.g., Thompson v. Commissioner*, T.C. Memo. 2011-291, 2011 WL 6382704, at \*2 n.8; *Morris v. Commissioner*, T.C. Memo. 2008-65, 2008 WL 704208, at \*1, *aff'd*, 431 F. App'x 535 (9th Cir. 2011).

Mr. Beacom explained that he found the 2010 and 2013 returns buried under other documents in the back of a filing cabinet when doing a final search of his records. While respondent did not have sufficient time to review the returns, he would not have been able to verify them because respondent's records for petitioners before 2017 were not available. Therefore, petitioners' late production did not prejudice respondent.

In any event these returns only confirm that petitioners carried the AMT credit forward from periods before the years reported on those returns. They do not explain the origin of the AMT credit. Consequently, admitting Exhibits 23-P and 24-P does not change our ultimate conclusion. We will admit them even though they were exchanged late so that the record contains all of the evidence available to petitioners regarding the AMT credit in issue.

II.    *Burden of proof*

Generally, the taxpayer bears the burden of proving that the Commissioner's determinations set forth in a Notice of Deficiency are in error. Rule 142(a)(1); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). Petitioners' Pretrial Memorandum argues that section 7491 shifts the burden of proof to respondent if petitioners show that they "maintained records per IRS guidance," made a "good faith effort" to comply with the Code, and "cooperated" with respondent "in good faith." Petitioners

[*4] misconstrue the standard in section 7491(a). The burden of proof may shift to the Commissioner if the taxpayer introduces "credible evidence" with respect to the issue and satisfies certain conditions, including cooperating with reasonable requests by the Commissioner. § 7491(a)(1) and (2).

"Credits, like deductions, are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to them." *Vichich v. Commissioner*, 146 T.C. 186, 192 (2016) (first citing *Interstate Transit Lines v. Commissioner*, 319 U.S. 590, 593 (1943); and then citing *Segel v. Commissioner*, 89 T.C. 816, 842 (1987)). Taxpayers have a duty to maintain adequate and accurate records to substantiate their tax liabilities on their prior returns. *See* § 6001; Treas. Reg. § 1.6001-1.

Petitioners have not presented sufficient evidence to shift the burden of proof to respondent. Mr. Beacom only vaguely recalled the origin of the AMT credit,[4] and petitioners offered no documents that would allow us to verify it. *See Al-Soufi v. Commissioner*, T.C. Memo. 2015-68, at *8 ("Even where a taxpayer has lost records through no fault of his own, he is not relieved from the burden of substantiation."); *see also Malinowski v. Commissioner*, 71 T.C. 1120, 1125 (1979).

III.   *AMT credit*

"The Internal Revenue Code imposes upon taxpayers an [AMT] in addition to all other taxes imposed by subtitle A." *Allen v. Commissioner*, 118 T.C. 1, 5 (2002); *see* § 55(a). The AMT is imposed on the taxpayer's alternative minimum taxable income (AMTI), which is an income base broader than the base of taxable income for federal income taxes in general. *Allen*, 118 T.C. at 5 ("Congress established AMTI as a broad base of income in order to tax taxpayers more closely on their economic income . . . ."). AMTI is defined as the taxable income of a taxpayer for that tax year determined with adjustments provided in sections 56 and 58 (e.g., payment of state and local taxes, standard and miscellaneous itemized deductions, and the exercise of incentive stock options), and increased by the amounts of items of tax preference described in section 57 (e.g., accelerated depreciation, tax-exempt

---

[4] The sum total of petitioners' evidence was Mr. Beacom's testimony: "That's the time frame [1999–2005] where I think the AMT credit originally initiated, due to a large stock option I had or something at one point." He later testified that "[t]here were several different things going on during that six-year time frame. One of them that came to mind was a stock option grant that was in—I believe, that was '99 or 2000. But I don't recall exactly."

[*5] interest, and intangible drilling costs). § 55(b)(2). If the calculated AMT liability, or tentative minimum tax, exceeds the taxpayer's regular income tax liability, the taxpayer generally pays that excess as AMT. § 55(a).

Section 53 allows taxpayers to claim a credit against their federal income tax liability for AMT paid in prior years, adjusted for certain items (AMT credit). § 53(a) and (b); *Vichich*, 146 T.C. at 189; *see Holloway v. Commissioner*, T.C. Memo. 2006-256, 2006 WL 3422089, at *3. The carried-forward AMT credit that may be used is limited to the amount by which a taxpayer's regular tax liability for the year the AMT credit is claimed, less other allowable credits, exceeds his tentative minimum tax for that year. § 53(c).

Petitioners claim that the AMT credit originated from the exercise of incentive stock options sometime in 1999 or 2000. They further contend that the same AMT credit was carried forward into every subsequent year, up to 2021. But they have not produced the return reporting the AMT owed. Nor have they produced the first return on which the AMT credit was claimed or the subsequent returns between the date it first was claimed and 2017 showing its carryforward or application, other than the returns for 2010 and 2013. And Mr. Beacom's recollection of the origin of the AMT credit was vague (understandably, given the passage of time). We therefore cannot verify the source of the AMT credit or confirm what amount of credit, if any, is still available to petitioners for 2021. *See* § 6214(b) (explaining that we have jurisdiction to consider facts from other tax years not at issue to redetermine a deficiency for a year currently before the Court); *Roumi v. Commissioner*, T.C. Memo. 2012-2, 2012 WL 10811, at *3 n.6 ("Even though a taxpayer can use evidence other than books or records to substantiate claimed deductions, we are not bound to accept a taxpayer's unverified, undocumented testimony.").

IV.    *Recordkeeping*

Petitioners contend that because of a house flood in 2008, they are unable to produce returns from before this date. This does not explain the gap in their records from after this date.

**[\*6]** Petitioners defend their lack of documentation by claiming that IRS guidance requires taxpayers to retain prior year returns for a maximum of seven years. Internal Revenue Serv., *Publication 17: Your Federal Income Tax* 17–18 (Dec. 16, 2021), https://www.irs.gov/pub/irs-prior/p17--2021.pdf (prescribing various periods for retaining records, including seven years for losses from worthless securities and bad debt deductions); *see* § 6511(b). They misread that guidance. It requires taxpayers to retain documentation supporting the items reported on a return for seven years.[5] Petitioners should have maintained records supporting their claimed AMT credit for seven years from the date of the return on which they applied the credit, not seven years from the date of the return when they first paid the AMT. That is, petitioners were required to retain, as evidence of their eligibility for the AMT credit in tax year 2021, records (such as their prior returns) documenting the source of the AMT credit (and its prior utilization, if any) for seven years from 2021, not seven years from 1999 or 2000.

V.     *Section 6662(a)*

We next determine whether petitioners are liable for the accuracy-related penalty under section 6662(a) and (b)(2). That section imposes an accuracy-related penalty equal to 20% of the portion of an underpayment of tax required to be shown on a return that is attributable to a "substantial understatement of income tax." *Id.* An understatement of income tax is "substantial" if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. § 6662(d)(1)(A). Respondent determined an understatement of tax of $11,057, which exceeds both 10% of the tax required to be shown on the return and $5,000.

The Commissioner generally bears the burden of production with respect to a taxpayer's liability for an accuracy-related penalty. § 7491(c). In particular the Commissioner must show that he complied with the section 6751(b)(1) written supervisory approval requirement. § 7491(c). The record demonstrates, and petitioners do not dispute, that respondent complied with the requirements of section 6751(b).

Once the Commissioner satisfies the burden of production, the taxpayer bears the burden of proving that the Commissioner's

---

[5] We use petitioners' claimed seven-year retention period to highlight that the period is counted from the return on which the credit (or other tax item) is claimed; the guidance indicates different periods depending on the applicable period of limitations under section 6501.

[*7] determination is incorrect or that the taxpayer has an affirmative defense such as reasonable cause. *See* § 6664(c); Rule 142(a); *Higbee v. Commissioner*, 116 T.C. 438, 448–49 (2001). We decide whether a taxpayer acted with reasonable cause and in good faith on a case-by-case basis, taking into account all pertinent facts and circumstances. *See* Treas. Reg. § 1.6664-4(b)(1). Circumstances that may signal reasonable cause and good faith "include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." *Id.* Reliance on a professional tax adviser's advice constitutes reasonable cause and good faith if the taxpayer acted in good faith, and the reliance on the advice was reasonable. *Id.*

Petitioners contend that they relied on TurboTax's software to file their returns and track and apply the AMT credit carryforward and that they maintained their tax records after the flood. However, "[t]ax preparation software is only as good as the information one puts into it." *Bunney v. Commissioner*, 114 T.C. 259, 267 (2000). TurboTax's software does not constitute professional advice because petitioners were responsible for entering their tax information into the software. And petitioners testified that they did not seek help from a tax adviser to prepare their 2021 return.

Petitioners did not produce records or a reconstruction to substantiate the origin of the AMT credit, and their postflood records have gaps that prevent us from tracking the carryforward of the AMT credit for each postflood year. *See Roumi v. Commissioner*, 2012 WL 10811, at *6 (upholding a section 6662(a) penalty despite the taxpayer's losing records in a fire because the taxpayer failed to "make a reasonable effort to reconstruct his records or at least to present other credible evidence to support" the deductions claimed). We therefore hold that petitioners are liable for the accuracy-related penalty due to a substantial understatement of income tax.

We have considered the parties' remaining arguments, and to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

*Decision will be entered for respondent.*